**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| PAMELA LOVE,<br><br>Plaintiff,<br><br>vs.<br><br>COSTCO WHOLESALE CORPORATION; COSTCO WHOLESALE MEMBERSHIP, INC.; and JOSEPH FREAD,<br><br>Defendants. | No. 2:25-cv-01292-DCN<br><br>**ORDER** |

This matter is before the court on defendants Costco Wholesale Corporation ("Costco"), Costco Wholesale Membership, Inc. ("Costco Membership"), and Joseph Fread's ("Fread") motion to dismiss, ECF No. 5, and on plaintiff Pamela Love's ("Love") motion to remand, ECF No. 8. For the reasons set forth below, the court grants Love's motion to remand and denies defendants' motion to dismiss as moot.

## I. BACKGROUND

Love alleges that, on December 26, 2024, she tripped and fell on a slippery substance while walking down the aisles inside the Costco Retail Store in Mount Pleasant, South Carolina (the "Mount Pleasant Store"). ECF No. 1-1, Compl. ¶¶ 6–7. Love alleges Costco and Costco Membership transact business at the Mount Pleasant Store and that Fread, as "the General and/or Center Manager of the . . . Store, exercised a significant amount of control over the day-to-day operations of [the Store] and its premises." Id. ¶¶ 2–3. In general, Love asserts that defendants had "prior actual knowledge and/or constructive knowledge of the substance prior to the incident but failed

to take reasonable and timely steps to remedy, remove, repair and or warn of it." Id. ¶ 9. Additionally, Love contends that because defendants stock merchandise on top of shelves and on displays, they knew or should have known her visual attention would be distracted. Id. ¶¶ 10–11.

Love is a citizen of South Carolina and Costco and Costco Wholesale are citizens of Washington and California.[1] Compl. ¶ 2; ECF No. 1 ¶ 4. The parties' disagreement largely stems from the fact that Fread, like Love, is a citizen of South Carolina. Compl. ¶ 3; ECF No. 1 ¶ 4.

Love originally filed her complaint in the Charleston County Court of Common Pleas on January 10, 2025. ECF No. 1-1, Compl.; Love v Costco, No. 2025-CP-1000-59 (Charleston Cnty. Ct. C.P. Jan. 10, 2025). She asserts a single cause of action for negligence/gross negligence against all defendants. Compl. ¶¶ 12–21. On March 3, 2025, defendants removed the case to this court. ECF No. 1. Also on March 3, 2025, Costco filed an answer to the complaint, as a singular defendant, while Costco Membership and Fread filed a motion to dismiss in lieu of an answer. ECF Nos. 4; 5. On April 4, 2025, Love filed a motion to remand, ECF No. 8, and a response in opposition to the motion to dismiss, ECF No. 9. On April 11, 2025, defendants filed a reply in response to the motion to dismiss. ECF No. 11. On April 18, 2025, defendants responded in opposition to the motion to remand. ECF No. 12. The court held a hearing

---

[1] Love appears to allege that Costco is a citizen of Washington, and that Costco Membership is a citizen of California, Compl. ¶ 2, but defendants clarify, in their notice of removal, that Costco is a citizen of Washington, and that Costco Membership is a citizen of both California and Washington. ECF No. 1 ¶ 4. In any event, because all parties agree that both Costco and Costco Membership are not citizens of South Carolina and because, as explained below, the parties agreed to dismiss Costco Membership from this action, this distinction is immaterial.

on the two pending motions on May 29, 2025. ECF No. 16. At the hearing, the parties agreed to dismiss Costco Membership. Id. As such, the matter is now fully briefed and ripe for the court's review.

## II. STANDARD

Federal courts are courts of constitutionally limited jurisdiction. Original jurisdiction exists where a claim arises from federal law, see 28 U.S.C. § 1331, or where the amount in controversy exceeds the sum or value of $75,000 and the claim is between citizens of different states, see 28 U.S.C. § 1332.

Generally, any civil action brought in a state court of which the district courts of the United States have original jurisdiction may be removed by the defendant to the district court of the United States for the district and division embracing the place where such action is pending. 28 U.S.C. § 1441(a). "The party seeking removal bears the burden of demonstrating that removal jurisdiction is proper," Nordan v. Blackwater Sec. Consulting, LLC (In re Blackwater Sec. Consulting, LLC), 460 F.3d 576, 583 (4th Cir. 2006), and doubts regarding the propriety of removal are to be resolved in favor of retained state court jurisdiction, Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993). Because removal raises significant federalism concerns, "[i]f federal jurisdiction is doubtful, a remand is necessary." Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994).

## III. DISCUSSION

Despite all parties agreeing that both Love and Fread are citizens of South Carolina,[2] see Compl. ¶¶ 2–3; ECF No. 1 ¶ 4, defendants removed this case on the basis

[2] The amount in controversy is not at issue. Love's complaint seeks damages to exceed One Hundred Thousand and 00/100 Dollars. ECF No. 1 at 2; Compl. ¶ 22.

that Love cannot recover against Fread because he did not work at or manage the Mount Pleasant Store at the time of Love's alleged incident.[3] ECF No. 1 ¶ 5. Love argues that the court must remand this matter to state court for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1447(c). ECF No. 8 at 1. Specifically, she asserts that the court lacks diversity jurisdiction because the parties are not completely diverse, as Fread, like Love, is a citizen of South Carolina. Id. at 2. In response, defendants argue that Fread is not the manager of the Mount Pleasant Store and is thus a sham defendant and that the court should ignore his citizenship and retain jurisdiction pursuant to the fraudulent joinder doctrine. ECF No. 12 at 9–13; see also ECF No. 1 ¶¶ 20–22.

The fraudulent joinder doctrine "effectively permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999). To demonstrate fraudulent joinder, the removing party has the burden of proving "either: [1] [t]hat there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [2] [t]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts." Id. at 464 (alterations in original) (quoting Marshall, 6 F.3d at 232). When deciding a fraudulent joinder issue, the court's function is simply "to steer litigation to the proper forum with a minimum of preliminary fuss."

[3] Defendants also argued, in their notice of removal, that Love cannot possibly recover against Costco Membership for similar reasons. ECF No. 1 ¶ 5. However, because defendants agree that, unlike Love, Costco Membership is not a citizen of South Carolina, id. ¶ 4, the issue of whether Love can recover against Costco Membership has no bearing on the court's jurisdictional analysis. Additionally, the parties agreed during the hearing that Love would dismiss her claims against Costco Membership without prejudice. See ECF No. 16. Consequently, there is no reason for the court to reach this issue in this order.

Hartley v. CSX Transp., Inc., 187 F.3d 422, 425 (4th Cir. 1999). The "best way to advance this objective is to accept the parties joined on the face of the complaint unless joinder is clearly improper." Id. at 425. "[T]here need be only a slight possibility of a right to relief" against the in-state forum defendant in order to defeat removal under 28 U.S.C. § 1441(b)(2). Id. "Once the court identifies [a] glimmer of hope for the plaintiff's right to relief against the in-state forum defendant, the jurisdictional inquiry ends." Id.

In this case, defendants do not argue that there was any actual fraud in Love's pleadings. ECF No. 1 ¶¶ 5–6. Defendants base their fraudulent joinder argument on the assertion that there is no possibility Love could recover against them. ECF No. 12 at 12–13. The party alleging fraudulent joinder bears a heavy burden—it must show that the plaintiff "cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." Hartley, 187 F.3d at 422, 425. The court must remand if there is a "possibility of recovery." Id. at 425. As such, the central issue for this court to decide the fraudulent joinder question is whether there is any "possibility" that Love could establish her negligence cause of action against Fread. See id. To determine whether Love can establish a claim and recover, this court will first look to what she must prove.

Love's claims are based in negligence. Compl. ¶¶ 12–21. To bring a successful negligence claim, a plaintiff must demonstrate that (1) the defendant owed her a duty of care, (2) the defendant breached this duty, (3) the defendant's breach proximately caused the plaintiff's injuries, and (4) the plaintiff suffered an injury. Dorrell v. S.C. Dep't of Transp., 605 S.E.2d 12, 15 (S.C. 2004). Under South Carolina law, "[a] tortfeasor's duty arises from his relationship to the injured party. It is essential [for] liability for

negligence to attach that the parties shall have sustained a relationship recognized by law as the foundation of a duty of care." Est. of Parrott v. Sandpiper Indep. & Assisted Living-Del., LLC, 904 S.E.2d 455, 461 (S.C. Ct. App. June 26, 2024) (quoting Ravan v. Greenville Cnty., 434 S.E.2d 296, 308 (S.C. Ct. App. 1993)), cert. granted (Feb. 12, 2025). Thus, this court must determine whether the defendants, specifically Fread, had a duty to Love.

In her motion to remand, Love argues her allegations are sufficient such that she might possibly recover against Fread on her negligence claim. ECF No. 8 at 9. She alleges that Fread owed her a duty of care to customers like herself as the Frontend and/or Center Manager, citing his "significant amount of control over the day-to-day" operations of the store, including but not limited to "ensuring the safety of customers and guests visiting the store property through the timely and proper inspection, identification, correction, repair, remedying, and warning of potentially hazardous and/or dangerous conditions existing on and in the store." Id. at 10, 11. The thrust of her argument is that courts have routinely found that store managers (or managers of similar retail locations) owed duties to customers on the premises. Id. at 10.

Attached to Love's motion to remand is a screenshot of Fread's LinkedIn profile, listing his occupation as both the Frontend Manager and Center Manager for Costco in Mount Pleasant, as well as a screenshot of a LinkedIn description of the Center Manager job duties.[4] ECF Nos. 8-2; 8-11. Love argues that Fread led her to believe he "was the Center Manager of the subject store based on his own public representations." ECF No.

[4] The job posting describes the center manager as "leading a team of professionals, overseeing daily operations, and ensuring customer satisfaction… responsible for managing a specific location or department within a larger organization, such as a call center, a retail store, or a medical center." ECF No. 8-11.

8 at 17. In support of her argument that Love did not add Fread as a sham to defeat diversity jurisdiction, she notes she served Fread on February 3, 2025, one month prior to defendants' filing of their notice of removal. Id. at 3. In response to defendants' claim Fread is not the manager, Love asserts she asked defendants for the name of the manager via email and interrogatories and agreed to amend her complaint if they provided a separate name. ECF No. 8 at 4. Love contends that her allegations and the evidence produced by her good faith investigation are sufficient to meet the relatively low bar of showing that there is a "mere possibly" or "glimmer of hope" for recovery against Fread. Id. at 15. Love argues if Fread is simply the wrong manager, the correct manager would also likely be a citizen of South Carolina and destroy diversity. ECF No. 8-9 at 3.

In response, defendants argue that Fread was not employed at Costco's Mount Pleasant Store at the time of Love's alleged incident, meaning Love cannot possibly recover against him. ECF No. 12 at 9–13. To support this assertion, defendants point to an affidavit in which Fread testified that he was previously employed at the Mount Pleasant Store but that, in October 2024, he was promoted and transferred to a different Costco location. Id. at 9 (citing ECF No. 12-3, Fread Aff.). Beyond that, defendants point out that, in the LinkedIn post cited by Love, Fread indicates that he is the "Center Manager" or "Frontend Manager" rather than a general manager. Id. at 10. Thus, defendants contend that, even if this post indicates Fread still works at the Mount Pleasant Store, the post fails to support Love's contention that Fread was the Mount Pleasant Store's general manager. Id. Consequently, defendants argue that Fread did not exercise the necessary control over the Mount Pleasant Store to be held liable, and Love has no possibility of recovery against him. Id. at 11–13. Defendants argue any manager

would be an improper party. ECF No. 11 at 9. Regardless of whether Fread is the manager, the issue remains whether any manager of the Mount Pleasant Store would have a duty to Love.

In South Carolina, shopkeeper liability "is founded upon the duty of care a possessor of land owes to an invitee." Wintersteen v. Food Lion, Inc., 542 S.E.2d 728, 730 (S.C. 2001). In considering whether South Carolina law imposes a duty on store managers to maintain a safe premises, this district has posited that the touchstone of the inquiry is the extent of the manager's control over the premises. See Benjamin v. Wal-Mart Stores, Inc., 413 F. Supp. 2d 652, 655–56 (D.S.C. 2006) (citing Dunbar v. Charleston & W. C. Ry. Co., 44 S.E.2d 314, 317 (S.C. 1947)) (finding that "liability depends upon control, rather than ownership, of the premises"); see also Cook v. Lowe's Home Ctrs., Inc., 2006 WL 3098773, at *4 (D.S.C. Oct. 30, 2006). "In considering whether an individual has exercised such control of the premises so as to impose a duty to reasonably inspect the premises, a court will generally consider the individual's power or authority to manage, direct, superintend, restrict, regulate, govern, administer, or oversee the management of the property." Benjamin, 413 F. Supp. 2nd at 655–656.

Love relies on Hardrick v. Wal-Mart Stores Inc., 2018 WL 3867805 (D.S.C. Aug. 15, 2018), in which the plaintiff sued Wal-Mart for negligence after an allegedly defective shelf fell and injured him. The key question in Hardrick was whether the defendant-manager exerted sufficient control over the area where the plaintiff's injuries occurred such that there was at least a "mere possibility" the plaintiff could establish a right to relief against the defendant-manager in the state court action. Id. at *3. This court found:

> It is conceivable that Hardrick could demonstrate, after adequate discovery, that [the defendant-manager] did exercise "such control of the premises so as to impose a duty to reasonably inspect the premises" and that [he] did in fact owe a legal duty to people in the store to ensure that there were no hazards. It is also possible that Hardrick might prove that this [shelving] was a known hazard that should have been repaired or replaced by [the defendant-manager]. Considering the high standard for fraudulent joinder, and resolving all questions of law and fact in Hardrick's favor, the court finds that [the defendant-manager] was not fraudulently joined.

Hardrick, 2018 WL 3867805, at *3.

Although the manager in Hardrick was a general manager of the entire store, and Fread is alleged to be a Frontend or Center Manager, there is a factual dispute as to what level of control Fread had over the area of the store where Love tripped and fell. Other South Carolina courts have hinged their analysis on the level of control a manager has when deciding fraudulent joinder, as "the fact that a store manager by virtue of his position has a high level of control over the store, that the store manager in the case at bar is not a sham defendant." Mobley v. Wal-Mart Stores, Inc., 2010 WL 503101, at *5 (D.S.C. Feb. 8, 2010) (citing to Cook, 2006 WL 3098773).

The court finds there is a factual discrepancy in the record as to whether Fread was the manager of the Mount Pleasant Store, and that, although South Carolina courts differ, a manager could have a duty to a store patron such as Love. The court must resolve any doubt in favor of retained state court jurisdiction. See Marshall, 6 F.3d at 232. Here, Love has alleged that Fread, as the Frontend Manager and/or Center Manager, had significant control over the Mount Pleasant Store. ECF No. 1-1, Compl. ¶¶ 2–3. Love bases this allegation on Fread's LinkedIn profile, ECF No. 8-2, which contradicts Fread's affidavit, ECF No. 12-3. Fread's affidavit does not address his LinkedIn profile and does not resolve the discrepancy between his two statements. ECF No. 5-2.

Resolving this fact discrepancy in Love's favor, as the court is required to do, the court finds there is a "glimmer of hope" or "mere possibility" that Love could establish that Fread was the manager of the Mount Pleasant Store. See Hartley, 187 F.3d at 425. Thus, Love could establish Fread had a sufficient level of control over the Mount Pleasant Store to establish that he owed a duty to customers like Love. As such, the court finds there is a "mere possibility" that Love would be able to establish a cause of action of negligence against Fread.[5]

Resolving all questions of fact and law in Love's favor, the court finds that Fread was not fraudulently joined and remands the matter to the Charleston County Court of Common Pleas. Because the court is without subject matter jurisdiction over this dispute, the court need not, and cannot, reach defendants' motion to dismiss and, therefore, denies that motion as moot.

---

[5] Love also argues defendants failed to satisfy the requirements set forth in 28 U.S.C.A. § 1446 (d) as defendants filed their notice of removal thirty-seven days after service was completed on both parties. ECF No. 8 at 18. Defendants respond by arguing that, under 28 U.S.C. § 1446(b)(2)(C), "[i]f defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal." Here, the defendants filed their notice of removal on March 3, 2025. ECF No. 1. This removal was within both thirty days from February 1, 2025, for Fread, the first served party, and within thirty days from February 20, 2025, the date of the remaining last-served parties to this action. The court finds notice was timely.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** the motion to remand and **DENIES AS MOOT** the motion to dismiss.  Accordingly, the court **REMANDS** the matter to the Charleston County Court of Common Pleas.

**AND IT IS SO ORDERED.**

 

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**June 13, 2025**
**Charleston, South Carolina**